UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JERALD WEBB,                    )

                )

      Petitioner,         )

                )

v.                    )         No. 4:21 CV 48 RWS

                )

RICHARD ADAMS,        )

                )

      Respondent.     )

## MEMORANDUM AND ORDER

This case is before me on the petition of Jerald Webb for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Webb asserts fourteen grounds for relief in his petition. Because his claims for relief are procedurally defaulted and/or lack merit, I will deny Webb's petition.

## BACKGROUND

On April 20, 2016, a jury convicted Jerald Webb of two counts of first-degree statutory rape, one count of second-degree statutory rape, and two counts of second-degree statutory sodomy. The Missouri Circuit Court sentenced him to concurrent terms of twenty years for the first-degree statutory rape convictions, seven years for the second-degree statutory rape conviction, and seven years for the second-degree statutory sodomy convictions.

The Missouri Court of Appeals affirmed the trial court's judgment, and the mandate in the direct appeal issued on October 18, 2017.  On December 18, 2017, Webb filed a post-conviction relief motion pursuant to Missouri Supreme Court Rule 29.15.  The Circuit Court denied the motion on August 6, 2018, and the Missouri Court of Appeals issued its mandate denying Webb's post-conviction appeal on February 4, 2020.  Webb then timely filed his petition for writ of habeas corpus on January 12, 2021.

The Missouri Court of Appeals described the factual and procedural background of this case as follows:

> H.L. ("Victim") met Webb in 2012. Webb and Victim's sister, C.W., dated and, that same year (2012), moved to an apartment in St. Louis. Victim also lived in St. Louis with her mother ("Mother") in a two-family flat. Victim would often stay the night at C.W. and Webb's apartment.
>
> One night around May 2012, when Victim was "twelve turning thirteen" years old, Victim spent the night at C.W. and Webb's apartment. C.W. was at work, and Victim was alone with Webb. While Victim was asleep on the couch, Webb touched her shoulder and told her to "come here." Thinking something was wrong with one of C.W.'s pets, Victim got up and followed Webb into the bedroom. Webb told Victim to lay on the bed, and he pulled her pants and underwear down to her ankles. Webb then pulled his pants down and put his penis inside Victim's vagina. Victim told Webb to stop, but he would not listen. Afterwards, Victim went back to the living room and cried. Webb did not say anything to Victim. Victim did not tell anyone.
>
> A few months later, when Victim was thirteen, she spent the night at the apartment and a second incident occurred. Victim was laying on the couch, and Webb told her to "come here." This time Victim refused, but Webb insisted. Webb pulled down Victim's pants and again had sexual intercourse with Victim. Victim told him to stop and tried to push him away, but Webb kept moving her hand away. The next day, Webb drove Victim to school and

2

would not let her out of the car until she agreed not to tell anyone what happened. Victim did not tell anyone.

In 2013, when Victim was "thirteen turning fourteen" years old, she again spent the night at the apartment. Victim was laying on the couch when Webb started "messing with" her, telling her to "come here," pulling on her arms, and leading her to the bedroom. Again, Webb pulled down Victim's pants and had sexual intercourse with Victim. Victim sat on the bed and cried.

Toward the end of 2013, C.W. and Webb ended their relationship so Webb moved into Mother's flat with Victim and Mother. Mother took a vacation to Texas, and she left Victim at home with Webb. While Mother was in Texas, Victim was in her room, and Webb pushed her on the bed. Webb pulled down both their pants and had sexual intercourse with Victim. Webb also placed his penis in Victim's mouth, and Webb placed his mouth on Victim's vagina.

Around August 2014, C.W. confronted Webb about text messages she saw on his phone that he sent to Victim. Webb admitted to C.W. that he and Victim were in a sexual relationship. Webb also told Mother that he and Victim were "dating." Mother called the police.

Webb left the flat before the police arrived and went to C.W.'s apartment. When C.W. arrived back at the apartment, she told Webb that he needed to tell Mother the "exact details" of his relationship with Victim. Webb then sent Mother three text messages. The first text message read, "Now that I'm gone i should tell you. Me and [Victim] were having oral sex in the house and we never had sex but we did other things for a year now even whe [sic]." The second message read, "I'm sorry i betrayed you and I'm worthless." The third message read, "I should die and I'm going to take care of that. I just wanted to tell you i never had real sex with her but we were doing stuff and I'm so sorry."

The next day, Mother showed Detective Dana Pickett ("Detective Pickett") the three text messages, and Detective Pickett documented the text messages in her report. Detective Pickett seized Mother's cell phone for a forensic examination. The forensic examiner extracted the phone calls and text messages that were on the phone, and generated a report.

Webb was charged with two counts of first-degree statutory rape . . . two counts of second-degree statutory rape . . . and two counts of second-degree statutory sodomy . . . .

A jury trial was held. Over defense counsel's objection, the trial court allowed the State to admit into evidence the three text messages and a handwritten letter Mother found in a Brinks Security box in Webb's room. At the close of the State's evidence, defense counsel moved for a judgment of acquittal on all counts. The trial court granted defense counsel's motion only as to [the second count of second-degree statutory rape]. Webb did not present any evidence at trial. The jury found Webb guilty of [all other charges]. The trial court sentenced Webb to . . . . a total of twenty years' imprisonment.

ECF No. 11-6 at 2–4 (cleaned up).

In his petition for writ of habeas corpus, Webb raises fourteen grounds for relief:

(1) Trial counsel provided ineffective assistance by agreeing with the prosecutor not to argue adverse inferences from the prosecutor's decision not to call particular witnesses;

(2) Trial counsel provided ineffective assistance by not inquiring into the victim's prior or subsequent sexual history;

(3) Trial counsel provided ineffective assistance by not objecting to the State's motion in limine concerning text messages from the victim's mother's phone;

(4) Trial counsel provided ineffective assistance by not having a handwriting expert examine a handwritten letter, and counsel provided ineffective assistance on direct appeal by not arguing that the letter was erroneously admitted into evidence;

(5) Trial counsel provided ineffective assistance by not having a forensic expert examine the cellphones belonging to the State's witnesses to recover deleted text messages and voicemails;

(6) Trial counsel provided ineffective assistance by not presenting evidence in his possession that the victim had changed her story numerous times;

4

(7) Trial counsel provided ineffective assistance by not asking for an adverse inference instruction concerning the victim's mother's deletion of text messages;

(8) Trial counsel provided ineffective assistance by not attempting to strike the entire jury venire, or at least every venire member who had been a victim of sexual abuse or had close relations with someone who was a victim or perpetrator of sex crimes;

(9) There was a fatal variance between the time periods alleged in the indictments and the time periods in the jury instructions, and the Missouri Court of Appeals unreasonably adjudicated a clearly established federal constitutional claim and based its decision on an unreasonable determination of the facts when it denied Webb's fatal variance claim on direct appeal;

(10) The trial court erred in not excluding prior bad acts evidence of Webb cutting the victim's sister, trial counsel provided ineffective assistance by not objecting to the evidence, direct appeal counsel provided ineffective assistance by not briefing the issue, and that post-conviction counsel provided ineffective assistance by not raising trial counsel's ineffectiveness on this point;

(11) Trial counsel, direct appeal counsel, and post-conviction counsel provided ineffective assistance by not challenging the chain of custody of cell phones from which text messages were extracted;

(12) Trial counsel provided ineffective assistance by not discussing the text message evidence with Webb or the possibility of using a forensic expert to recover deleted text messages;

(13) Trial counsel provided ineffective assistance by not discussing the contents of text messages between the victim's sister and Webb; and

(14) Trial counsel provided ineffective assistance by not adequately informing Webb that his trial testimony would be the only way to rebut, explain, or contest the contents of a letter written by Webb.

ECF No. 1 at 6–24.  Respondent asserts that grounds one through eight and twelve through fourteen are procedurally defaulted.  Respondent also asserts that grounds nine through eleven are partially procedurally defaulted.  For any claim which is not procedurally defaulted, Respondent asserts that the decisions by the Missouri Court of Appeals are entitled to deference.

## LEGAL STANDARD

Federal courts are authorized to issue habeas relief for state prisoners pursuant to 28 U.S.C § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  But this power is limited to "only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Id.*

For claims adjudicated on the merits in state court proceedings, federal courts may issue habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

An adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

6

question of law or decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An adjudication is an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* The standard requires an objectively unreasonable application of federal law; a merely incorrect application is not sufficient. *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Thus, to obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up). This standard is difficult to meet. *Id.* at 357–58.

As with legal findings, "a determination of a factual issue by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

If a prisoner has gone through all stages of direct appeal and post-conviction proceedings without presenting a claim to the state courts, that claim is procedurally

defaulted.  *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997); *see also Shinn v. Ramirez*, 142 S.Ct 1718, 1731 (2022).  Federal courts may not reach the merits of procedurally defaulted claims unless the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (cleaned up).  "If a prisoner fails to demonstrate cause, the court need not address prejudice."  *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007).

To demonstrate cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  But "the failure to preserve claims on appeal from a postconviction proceeding can[not] constitute cause."  *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

Prior to *Martinez v. Ryan*, 566 U.S. 1 (2012), the general rule was that the ineffective assistance of postconviction counsel could not constitute cause for procedural default because there is no Sixth Amendment right to postconviction counsel.  *Davila v. Davis*, 582 U.S. 521, 528 (2017) (internal citations omitted).  But the Supreme Court created a narrow exception to this rule in *Martinez* and held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding,

there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17.

The *Martinez* exception applies where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal, and where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013).

A petitioner such as Webb claiming ineffective assistance of post-conviction counsel as the cause for his procedural default of his ineffective assistance of trial counsel claims must demonstrate the following:

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of either "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim."

*Marcyniuk v. Payne*, 39 F.4th 988, 996 (8th Cir. 2022) (cleaned up).  A claim is substantial if it has "some merit."  *Martinez*, 566 U.S. at 14.  That "means that whether [the claimant's] trial counsel was ineffective . . . must at least be debatable among jurists of reason."  *Marcyniuk*, 39 F.4th at 996 (internal citations omitted).

Even if cause is established, the petitioner must still show that the claimed constitutional violation "worked to his actual and substantial disadvantage."

*Murray*, 477 U.S. at 494.   This requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (explaining that it is not sufficient to show that the errors at trial created a mere "possibility of prejudice"). If Webb fails to show prejudice, then I need not determine whether his trial counsel's performance was deficient. *Marcyniuk*, 39 F.4th at 997 (citing *Strickland*, 466 U.S. at 697).

## DISCUSSION

### A. Ground One: Trial counsel provided ineffective assistance by agreeing with the prosecutor not to argue adverse inferences from the prosecutor's decision not to call particular witnesses

In Ground One, Webb claims he was denied effective assistance of counsel when trial counsel agreed with the prosecutor not to argue adverse inferences from the prosecutor's decision not to call particular witnesses.  This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

To determine whether Webb's default is excused, I must determine if postconviction counsel was ineffective for failing to raise the claim.  To demonstrate ineffective assistance of postconviction counsel as the cause for his procedural default, Mitchell must first establish that the underlying claim of ineffective

10

assistance of trial counsel was a "substantial" claim.  *See Marcyniuk*, 39 F.4th at 996.

Upon review of the record, I find that Webb's first claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.  In Missouri, it is a general rule that "a party may not argue adverse inference from the failure to call a witness who is equally available to both parties, or unavailable to both parties."  *State v. Wallace*, 43 S.W.3d 398, 404 (Mo. Ct. App. 2001) (internal citation omitted).  Here, the record does not reflect that any particular witness was available to only the State, so Webb's attorney could not have reasonably argued adverse inference.  And because the adverse inference argument would not have been permitted, Webb cannot show he was prejudiced by his trial counsel's agreement not to argue such adverse inferences.  As a result, Ground One of Webb's habeas petition will be denied.

## B. Ground Two: Trial counsel provided ineffective assistance by not inquiring into the victim's prior or subsequent sexual history

In Ground Two, Webb claims he was denied effective assistance of counsel because his trial counsel did not inquire into the victim's prior or subsequent sexual history.  This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Upon review of the record, I find that Webb's second claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.

In Missouri, specific incidents of sexual conduct by a sex-offense victim are admissible only in the following circumstances: (1) prior conduct with the defendant to support a defense of consent; (2) prior conduct showing an alternate source for the origin of semen, pregnancy, or disease; (3) evidence of immediate circumstances of the crime; or (4) evidence in a case where the State is required to prove chaste character as an element of the offense. Mo. Rev. Stat. § 491.015. Because Webb does not claim that any of these exceptions apply, his counsel would not have been permitted to inquire into the victim's prior or subsequent sexual history. *See State v. Rycraw*, 507 S.W.3d 47, 56 (Mo. Ct. App. 2016) ("Generally, evidence is not independently admissible under the relevance test in Section 491.015.2; thus, an express exception under subsection 1 must be met before proceeding to the relevance analysis under subsection 2.").

Because the inquiry would not have been permitted, Webb cannot show prejudice from his counsel's failure to inquire into the victim's prior or subsequent sexual history. As a result, Ground Two of Webb's habeas petition will be denied.

### C. Ground Three: Trial counsel provided ineffective assistance by not objecting to the State's motion in limine concerning text messages from the victim's mother's phone

In Ground Three, Webb claims that he was denied effective assistance of counsel because his trial counsel did not object to the State's motion in limine concerning text messages from the victim's mother's phone. This claim is

12

procedurally defaulted because Webb did not present it in his amended post-conviction relief motion.

Upon review of the record, I find that Webb's third claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit. Here, despite arguing to keep out all the text messages, Webb claims that his trial counsel should have objected to the State's motion seeking to exclude all but three text messages from the victim's mother's phone. Webb's trial counsel did not act unreasonably by failing to oppose a motion that agreed with the defense's position on keeping out the other text messages, and Webb has failed to overcome the strong presumption that his counsel's actions fell within the "wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. As a result, Ground Three of Webb's habeas petition will be denied.

### D. Ground Four: Trial counsel provided ineffective assistance by not having a handwriting expert examine a handwritten letter, and counsel provided ineffective assistance on direct appeal by not arguing that the letter was erroneously admitted into evidence

In Ground Four, Webb claims that he was denied effective assistance of counsel because his trial counsel did not have a handwriting expert examine a handwritten letter, and because his appellate counsel did not argue that the letter was erroneously admitted into evidence even though it was unsigned and did not explicitly refer to the victim. This claim is procedurally defaulted because the factual and legal theory presented to the state courts rested on a Fourth Amendment

search and seizure theory.  *See* ECF No. 11-10 at 107–11; *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) ("A federal habeas claim must rely on the same factual and legal bases relied on in state court.").

Upon review of the record, I find that Webb's fourth claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.  The Missouri Court of Appeals reasonably concluded that circumstantial evidence authenticated Webb's letter.  *See* ECF No. 11-6 at 14 (explaining that the letter came from a safe located in a room used only by Webb and that the handwriting was identified as Webb's by a witness who lived with Webb and was familiar with his handwriting).

Based on these conclusions, Webb's trial counsel did not act unreasonably by failing to have a handwriting expert examine the letter.  Nor did his appellate counsel act unreasonably by failing to argue that the letter was erroneously admitted into evidence.  As a result, Ground Four of Webb's habeas petition will be denied.

### E. Ground Five: Trial counsel provided ineffective assistance by not having a forensic expert examine the cellphones belonging to the State's witnesses to recover deleted text messages and voicemails

In Ground Five, Webb claims that he was denied effective assistance of counsel because his trial counsel did not have a forensic expert examine the cellphones belonging to the State's witnesses to recover deleted text messages and

voicemails.  This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Upon review of the record, I find that Webb's fifth claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.  Webb has not shown how any deleted messages could have affected the outcome of the trial.  As a result, Ground Five of Webb's habeas petition will be denied.

## F. Ground Six: Trial counsel provided ineffective assistance by not presenting evidence in his possession that the victim had changed her story numerous times

In Ground Six, Webb claims that he was denied effective assistance of counsel because his trial counsel did not present evidence in his possession that the victim had changed her story numerous times.  This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Upon review of the record, I find that Webb's sixth claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.  As demonstrated by the record, Webb's trial counsel highlighted inconsistencies in the victim's story several times during the trial.  *See* ECF No. 11-1 at 263–80 (defense counsel's cross-examination of the victim); ECF No. 11-1 at 318–28 (defense counsel's cross-examination of Detective Dana Pickett); ECF No. 11-1 at 381–90 (defense counsel's closing argument).

Webb's counsel highlighted the inconsistencies in a reasonable way.  *See Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (reasonable "strategic choices . . . are virtually unchallengeable").  Furthermore, Webb has not shown that the outcome of the trial would have been different if his counsel had presented the inconsistencies in a different way.  As a result, Ground Six of Webb's habeas petition will be denied.

### G. Ground Seven: Trial counsel provided ineffective assistance by not asking for an adverse inference instruction concerning the victim's mother's deletion of text messages

In Ground Seven, Webb claims that he was denied effective assistance of counsel because his trial counsel did not ask for an adverse inference instruction concerning the victim's mother's deletion of text messages.  This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Upon review of the record, I find that Webb's seventh claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.  Even if the victim's mother did delete text messages, victims of spoliation are not entitled to an adverse inference instruction in Missouri.  *Marmaduke v. CBL & Assocs. Mgmt., Inc.*, 521 S.W.3d 257, 270 (Mo. Ct. App. 2017 (internal citations omitted).  Given that Webb was not entitled to an adverse inference instruction, his trial counsel acted reasonably by asking the jury to infer that text messages helpful to Webb were destroyed.  *See* ECF No. 11-1 at 384–85; *Marmaduke*, 521 S.W.3d at

16

270 ("An inference is a permissible deduction the trier of fact may make without an express instruction of law by the court.").  As a result, Ground Seven of Webb's habeas petition will be denied.

### H. Ground Eight: Trial counsel provided ineffective assistance by not attempting to strike the entire jury venire, or at least every venire member who had been a victim of sexual abuse or had close relations with someone who was a victim or perpetrator of sex crimes

In Ground Eight, Webb claims that he was denied effective assistance of counsel because his trial counsel did not attempt to strike the entire jury venire, or at least every venire member who had been a victim of sexual abuse or had close relations with someone who was a victim or perpetrator of sex crimes.  This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Of the twenty-three venire members who Webb alleges had bias against him, only one actually ended up on the jury.  *See* ECF No. 1 at 10.  And that juror stated to the judge: "I believe I can make a decision based on this case alone and separate [my personal experiences].  I would be objective and impartial."  ECF No. 11-1 at 52; *see Pearson v. State*, 280 S.W.3d 640, 646 (Mo. Ct. App. 2009) (citing *State v. Storey*, 901 S.W.2d 886, 894 (Mo. banc 1995)) ("If a venireperson unequivocally indicates an ability to evaluate the evidence fairly and impartially, trial counsel is not ineffective in failing to seek removal.").

Given these facts, Webb has failed to demonstrate prejudice because he has not shown that the individual jurors who tried him were biased or that a different jury would have reached a different result.  *See Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir. 1998) (citing *Wright v. Nix*, 928 F.2d 270 (8th Cir. 1991)).  As a result, Ground Eight of Webb's habeas petition will be denied.

I. **Ground Nine: There was a fatal variance between the time periods alleged in the indictments and the time periods in the jury instructions, and the Missouri Court of Appeals unreasonably adjudicated a clearly established federal constitutional claim and based its decision on an unreasonable determination of the facts when it denied Webb's fatal variance claim on direct appeal**

In Ground Nine, Webb claims that there was a fatal variance between the time periods alleged in the indictments and the time periods in the jury instructions, and the Missouri Court of Appeals unreasonably adjudicated a clearly established federal constitutional claim and based its decision on an unreasonable determination of the facts when it denied Webb's fatal variance claim on direct appeal.  On direct appeal, the Missouri Court of Appeals rejected this claim as follows:

> The purpose of an indictment is to put the accused on notice of the charges so that he can prepare an adequate defense. *State v. Ellis*, 853 S.W.2d 440, 443 (Mo. App. E.D. 1993). The mere presence of a variance between the indictment and a jury instruction "is not conclusive to the question of whether there is reversible error." *State v. Lee*, 841 S.W.2d 648, 650 (Mo. banc 1992). "A variance is not fatal, and will not require reversal, unless it submits a new and distinct offense from that with which defendant was charged." *State v. Glass*, 136 S.W.3d 496, 520 (Mo. banc 2004). "A variance must be material, and defendant must be prejudiced, to warrant reversal." *Id.* "Variances are material when they affect whether the accused received adequate notice;

variances are prejudicial when they affect the defendant's ability to defend against the charges." *Id.*

Here, Count I of the indictment charged that Webb committed the crime of first-degree statutory rape on or between May 1, 2012 and May 24, 2012; however, the jury instruction extended the date ranges to between January 1, 2012 and May 24, 2013. Count II of the indictment charged that Webb committed the crime of first-degree statutory rape on or between June 1, 2012 and June 30, 2012; however, the jury instruction extended the date ranges to between January 1, 2012 and May 24, 2013. Count III, second-degree statutory rape, and Counts IV and V, second-degree statutory sodomy, of the indictment charged that Webb committed the crimes on or between July 1, 2013 and August 31, 2013; however, the jury instructions extended the date ranges to between May 25, 2013 and August 3, 2014. On appeal, Webb asserts that the variances are fatal because he was denied advance notice of the exact nature of the charges against him as well as the ability to prepare an adequate defense or present evidence of his innocence for the extended date ranges. The State counters that time is not of the essence and, thus, there was no prejudice.

We recognize the principle that time is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse. *State v. Miller*, 372 S.W.3d 455, 464 (Mo. banc 2012); *State v. Gaines*, 316 S.W.3d 440, 454 (Mo. App. W.D. 2010); *State v. Sprinkle*, 122 S.W.3d 652, 659 (Mo. App. W.D. 2003). However, "even though the exact date of a charged offense is not an element of the crime, the indictment or information must allege the time of the alleged offense with reasonable particularity." *Miller*, 372 S.W.3d at 455–56 (internal citation omitted). Accordingly, we must determine whether the extended date ranges constituted material and prejudicial variances, affecting the notice requirement and Webb's ability to defend himself against the charges. *See Glass*, 136 S.W.3d at 520.

We find the variances were not material changes to the charged offenses and did not deny Webb adequate notice. Victim consistently testified as to her age at the time of each offense, and Webb was aware of Victim's birthday. Given this knowledge, Webb knew, or could reasonably estimate, the general time period he was required to defend against for each of the charged offenses. Moreover, the indictment specifically provided that the offenses occurred at a location in the City of St. Louis. Thus, Webb was on notice that the charged offenses occurred between the time he moved to St. Louis in 2012 and August 3, 2014, when Mother called the police. Notably, Webb heard all the evidence

presented at trial, including the approximate dates and locations of the offenses, and was not taken by surprise when the jury instructions allowed the jury to find the offenses occurred during the extended date ranges. *See State v. Tillman*, 289 S.W.3d 282, 293–94 (Mo. App. W.D. 2009) (finding appellant was on notice and was not taken by surprise when the verdict director changed the method of the offense of second-degree murder from strangulation to blunt force trauma because his expert introduced evidence of blunt force trauma as a possible manner of death).

Furthermore, the variances did not prejudice Webb's ability to defend himself. Webb's defense at trial was a general denial of all culpability. Defense counsel attacked Victim's credibility by arguing she was lying about the sexual encounters because she had given inconsistent accounts over time, which rendered her testimony a "nearly meaningless jumble of information." This defense was not undermined by Webb's contention that the jury instructions extended the date ranges originally charged in the indictment. Webb's argument that Victim's allegations were false would have been equally effective regardless of the extended date ranges. *See State v. Eisele*, 414 S.W.3d 507, 520 (Mo. App. E.D. 2013) (where the appellant argued that she was not involved in the offense at all, there was no prejudice from the fact that the information charged assault in the second degree "by breaking his bones," and the instruction stated "by squeezing J.G. and breaking his ribs" because her defense was a general denial of culpability). Thus, the variances were not fatal. Webb failed to prove that the variances were material and prejudicial. Accordingly, we find the trial court did not err in submitting the jury instructions. Points I, II, IV, V, and VI are denied.

ECF No. 11-6 at 6–8.

The Missouri Court of Appeals concluded that Webb had fair notice of the charged offenses and that he was not prejudiced by the variances between the indictment and the jury instructions.  As the state court noted, Webb was not taken by surprise because he knew the victim's birthday and knew the offenses related to the time after he moved to St. Louis in 2012 until the victim's mother called the police in August 2014.  And concerning prejudice, the state court found that the

variances did not prejudice Webb's defense because he used to the inconsistencies to attack the victim's credibility and support his general denial of culpability.

The state court's legal findings are not "so lacking in justification" that there is reason to set aside these determinations and subject the prior decision to review by this Court. *Harrington*, 562 U.S. at 102. Moreover, Webb does not provide any evidence that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law. Nor did he establish that the state courts' decisions were based on unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As a result, Ground Nine of Webb's habeas petition will be denied.

**J. Ground Ten: The trial court erred in not excluding prior bad acts evidence of Webb cutting the victim's sister, trial counsel provided ineffective assistance by not objecting to the evidence, direct appeal counsel provided ineffective assistance by not briefing the issue, and that post-conviction counsel provided ineffective assistance by not raising trial counsel's ineffectiveness on this point**

In Ground Ten, Webb claims that the trial court erred in not excluding prior bad acts evidence of Webb cutting the victim's sister, trial counsel provided ineffective assistance by not objecting to the evidence, direct appeal counsel provided ineffective assistance by not briefing the issue, and that post-conviction counsel provided ineffective assistance by not raising trial counsel's ineffectiveness on this point.

1. Ineffective assistance of trial counsel

21

On appeal of Webb's motion for post-conviction relief, the Missouri Court of Appeals rejected the claim concerning trial counsel as follows:

> Movant's third point on appeal alleges Trial Counsel was ineffective for failing to object and request a limiting instruction or mistrial based on uncharged "bad acts" evidence that Movant was involved in a physical altercation and cut the Victim's Sister with a pocket knife. Movant asserts that had this objection been made, the jury would not have found Movant guilty on all counts. We disagree.
>
> "The well-established general rule concerning the admission of evidence of prior criminal acts is that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." *State v. Thompson*, 489 S.W.3d 312, 324 (Mo. Ct. App. W.D. 2016). This right, that a defendant has the right to be tried only on the offense charged, is guaranteed in Article I, Sections 17 and 18(a) of the Missouri Constitution. *Id.*
>
> Pursuing one reasonable strategy to the exclusion of another does not constitute ineffective assistance of counsel. *Barton v. State*, 432 S.W.3d 741, 753 (Mo. 2014). The reviewing court presumes that the trial attorney's conduct was reasonable, and was not ineffective. *Knese v. State*, 85 S.W.3d 628, 631 (Mo. banc 2002) (citing *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001)).
>
> Trial Counsel made a strategic decision not to object to the Victim's Mother's testimony when she discussed Movant using a knife and cutting Victim's Sister. The motion court found three strategic reasons Trial Counsel chose not to object: (1) the length of the Victim's Mother's testimony; (2) the seemingly minor detail the "bad act" in question was, in relationship to the testimony; and (3) the desire not to discredit another witness's testimony. We agree with the motion court. There is more than one way to provide effective assistance in any give case, and even the best criminal defense attorneys would not defend one client the same way. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Although conceding that Trial Counsel made a strategic decision to not object, Movant cannot provide any reason that the strategy itself was invalid, nor can Movant meet the burden required to show the strategy amounted to ineffective assistance of counsel. Given the deference to the

strategic decisions of Trial Counsel and the standard of review we have of the motion court, Movant's argument is not compelling.

Even assuming arguendo that Trial Counsel was unreasonable in his decision to not object to the testimony, Movant still has not established prejudice. The comment in question was one line of testimony that never came out again at trial. Movant can provide nothing more than speculation about what this objection might have caused the jury to think. Again, Movant's only argument is that the jury deliberation took a long time. Even if an error by counsel is professionally unreasonable, the judgment will not be set aside if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691. The motion court found that this lack of objection was not prejudicial and would not have resulted in a mistrial. Aside from mere speculation, Movant fails to meet his burden of showing how he was prejudiced by Trial Counsel's decision. Whereas Movant has not met his burden to show that the outcome would have been different at trial, Point III is denied.

ECF No. 11-14 at 8–9 (cleaned up).

The Missouri Court of Appeals reasonably concluded that the decision not to object to this evidence was a valid strategic choice by Webb's trial attorney. *See Hinton*, 571 U.S. at 274 (explaining that reasonable "strategic choices . . . are virtually unchallengeable"). The state court also reasonably determined that Webb did not show how he was prejudiced by his trial counsel's failure to object to the evidence. As a result, the claim concerning trial counsel will be denied.

2.  Ineffective assistance of post-conviction counsel

Webb's claim concerning ineffective assistance of post-conviction counsel does not present a basis for federal habeas relief because "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351–52 (8th Cir. 1997).

Regardless, Webb's post-conviction counsel did raise this issue in post-conviction proceedings.  *See* ECF No. 11-10 at 118–21; ECF No. 11-12 at 29–30.  As a result, the claim concerning post-conviction counsel will be denied.

      3.  <u>Trial error and ineffective assistance of direct appeal counsel</u>

Webb's claims concerning trial error and ineffective assistance of direct appeal counsel are procedurally defaulted because the factual and legal theory presented to the state courts rested on ineffective assistance of trial counsel.  *See* ECF No. 11-10 at 118–21; *Interiano*, 471 F.3d at 856 ("A federal habeas claim must rely on the same factual and legal bases relied on in state court.").

Upon review of the record, I find that Webb's claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.  As discussed above, the decision not to object to the prior bad acts evidence was part of a valid trial strategy.  Given that decision, sua sponte intervention by the trial court could have improperly interfered with the defense's trial strategy.  *See Carter v. Armontrout*, 929 F.2d 1294, 1297 n.2 (8th Cir. 1991) (citing *Willis v. Kemp*, 838 F.2d 1510, 1519 n.19 (11th Cir. 1988)).  As a result, the claim concerning trial error and ineffective assistance of direct appeal counsel will be denied.

    **K. Ground Eleven: Trial counsel, direct appeal counsel, and post-conviction counsel provided ineffective assistance by not challenging the chain of custody of cell phones from which text messages were extracted**

24

In Ground Eleven, Webb claims that he was denied effective assistance of counsel because trial counsel, direct appeal counsel, and post-conviction counsel did not challenge the chain of custody of cell phones from which text messages were extracted.  On direct appeal, the Missouri Court of Appeals rejected Webb's claim that the trial court errored in admitting the text messages as follows:

> In Points VII and VIII, Webb contends the trial court erred in admitting State's Exhibit 1, Mother's phone and text records, because (1) there was an insufficient chain of custody to validate the authenticity and completeness of the records, and (2) the State laid an insufficient foundation. We disagree.
>
> The chain of custody for an exhibit is considered to be sufficient where the State provides evidence showing "reasonable assurance that the exhibit offered is the same evidence seized and is in substantially the same condition as when seized." *State v. McBenge*, 507 S.W.3d 94, 120 (Mo. App. E.D. 2016) (quoting *State v. Davenport*, 924 S.W.2d 6, 9 (Mo. App. E.D. 1996)). The purpose of this rule is to prevent an exhibit from being altered, substituted, or tampered with—all issues which the trial court is in the best position to determine. *Id.* However, "if evidence can be identified at trial there is no need to establish chain of custody. The chain of custody is only necessary when evidence is not distinguishable as is the case where items such as drugs are seized." *Davenport*, 924 S.W.2d at 10 (internal citation omitted); *see also State v. Spencer*, 62 S.W.3d 623, 627 (Mo. App. E.D. 2001) (holding the State need not prove chain of custody of a pair of underpants from a rape kit because the victim positively identified a photograph of the underpants at trial); *State v. Bode*, 125 S.W.3d 924, 929 (Mo. App. W.D. 2004) (finding poof of chain of custody unnecessary where a highway patrol trooper positively identified the items seized from the defendant's car).
>
> Here, Mother positively identified the text messages as those she received from Webb. She identified the number the text messages were sent from as belonging to Webb. She also testified the number was saved in her phone as "Jerry," which is how she referred to Webb, and that the name and number were associated with the text messages. Because the text messages were distinguishable and positively identified at trial, the State was not required to establish chain of custody. *See Davenport*, 924 S.W.2d at 10.

Webb's argument that the records were incomplete and possibly altered because Mother admitted deleting other text messages from Webb in no way affects the positive identification of the three text messages admitted at trial. Notably, Webb does not argue the admitted text messages were in any way altered, substituted, or tampered with.

Furthermore, Mother's testimony was sufficient to lay a proper foundation for admitting the text messages. Mother testified she regularly received text messages from Webb. She identified the phone number associated with the text messages as well as the personalized manner in which she saved the number in her cell phone. Mother also identified the substance of the text messages and established that Webb sent the texts. *See State v. Harris*, 358 S.W.3d 172, 175–76 (Mo. App. E.D. 2011). Additionally, C.W. observed Webb author the text messages. Any weaknesses in the completeness of the text messages or the foundation for their admission were for the jury to consider in determining the weight to accord the text messages. *See State v. Pennell*, 399 S.W.3d 81, 90 (Mo. App. E.D. 2013); *State v. Snow*, 437 S.W.3d 396, 403 (Mo. App. S.D. 2014).

Accordingly, we find the trial court did not abuse its discretion in admitting Exhibit 1. Points VII and VIII are denied.

ECF No. 11-6 at 11–13 (cleaned up).

The Missouri Court of Appeals reasonably concluded that the text messages were admissible under state evidentiary rules. *See Skillicorn v. Luebbers*, 475 F.3d 965, 974 (8th Cir. 2007) (internal citation omitted) (explaining that federal courts "may not re-examine a state court's interpretation and application of state law"). Given this determination, Webb's claim against his trial counsel fails because an attorney's performance "is not deficient for failure to object to admissible evidence." *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (internal citation omitted). And because Webb's claim against his trial counsel fails, the claims against his direct

appeal counsel and post-conviction counsel lack merit.  As a result, Ground Eleven of Webb's habeas petition will be denied.

### L. Ground Twelve: Trial counsel provided ineffective assistance by not discussing the text message evidence with Webb or the possibility of using a forensic expert to recover deleted text messages

In Ground Twelve, Webb claims he was denied effective assistance of counsel because his trial counsel did not discuss the text message evidence with Webb— specifically, the possibility of using a forensic expert to recover deleted text messages. This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Upon review of the record, I find that Webb's twelfth claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit. Webb has not identified any specific text messages that could have been recovered by a forensic expert or that could have created a reasonable probability that the trial's outcome would be different.  As a result, Ground Twelve of Webb's habeas petition will be denied.

### M. Ground Thirteen: Trial counsel provided ineffective assistance by not discussing the contents of text messages between the victim's sister and Webb

In Ground Thirteen, Webb claims that he was denied effective assistance of counsel because his trial counsel did not discuss the contents of text messages between the victim's sister and Webb.  This claim is procedurally defaulted because

it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Upon review of the record, I find that Webb's thirteenth claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit. Webb claims that these text messages could have been used to impeach the victim's sister's credibility as a witness. But all the text messages except three were excluded by the trial court. Discussing these text messages with Webb would not have changed the outcome of the trial because they were not admissible evidence. *See Skillicorn*, 475 F.3d at 974 (internal citation omitted) (explaining that federal courts "may not re-examine a state court's interpretation and application of state law"). As a result, Ground Thirteen of Webb's habeas petition will be denied.

### N. Ground Fourteen: Trial counsel provided ineffective assistance by not adequately informing Webb that his trial testimony would be the only way to rebut, explain, or contest the contents of a letter written by Webb

In Ground Fourteen, Webb claims he was denied effective assistance of counsel because his trial counsel did not adequately inform him that his trial testimony would be the only way to rebut, explain, or contest the contents of a letter written by Webb. This claim is procedurally defaulted because it was not presented to Missouri courts on direct appeal or in post-conviction proceedings.

Upon review of the record, I find that Webb's fourteenth claim does not fall within the equitable rule announced in *Martinez* because the claim is without merit.

The record contains Webb's testimony that he had adequate time to discuss his decision not to testify with his attorney, that it was ultimately his decision not to testify, that no one coerced him into deciding not to testify, and that he had no questions about his decision.  ECF No. 11-1 at 363–64.  As a result, Ground Fourteen of Webb's habeas petition will be denied.

### O. Request for an Evidentiary Hearing

Webb requests that an evidentiary hearing be held on his claims.  Federal courts may hold evidentiary hearings on habeas claims in only two scenarios. "Either the claim must rely on (1) a new and previously unavailable rule of constitutional law made retroactively applicable by the Supreme Court, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence."  *Shinn*, 596 U.S. at 381 (citing 28 U.S.C. § 2254(e)(2)) (cleaned up).  If either scenario applies, then the petitioner "must also show that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged.  *Id.*  And "even if all of these requirements are satisfied, a federal habeas court is still not *required* to hold a hearing or take any evidence."  *Id.* (emphasis in original).

An evidentiary hearing is not warranted here because all of Webb's claims are meritless and/or procedurally barred.  In this case, holding an evidentiary hearing would impermissibly prolong federal habeas proceedings without purpose.  *See*

29

*Shinn*, 596 U.S. at 390 (internal citations omitted) (explaining that evidentiary hearings needlessly prolong federal habeas proceedings if the newly developed evidence would not entitle the petitioner to relief); *see also Schriro v. Landrigan*, 550 U.S. 465 (2007) (approving denial of a hearing when evidence the petitioner sought to introduce would not have changed the result).  As a result, Webb's request for an evidentiary hearing will be denied.

## CONCLUSION

I will deny Webb's petition for writ of habeas corpus because his claims are procedurally defaulted and/or lack merit.  I will also decline to issue a certificate of appealability because Webb has not made a substantial showing of the denial of a federal constitutional right.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Jerald Webb for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that Webb's motion for an evidentiary hearing [1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability under 28 U.S.C. § 2253.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of November 2023.